DECISION ON OBJECTIONS TO THE MAGISTRATE'S DECISION
{¶ 1} Relator, Marianna E. Fleming, has filed an original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying her application for permanent total disability compensation, and to order the commission to issue a new order finding that she is entitled to such compensation.
 {¶ 2} Pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law, recommending that this court deny relator's request for a writ of mandamus. (Attached as Appendix A.) Relator has filed objections to the magistrate's decision.
 {¶ 3} Relator first contends that the commission's order fails to identify any evidence to demonstrate, from a vocational standpoint, that she can return to sustained remunerative employment. Relator argues that the commission rejected the central thesis of the vocational report of Carl W. Hartung, dated May 17, 2003, in which Hartung opined that the combination of relator's age, limited education and "the potential of physical demand performance within the sedentary level will have a significant impact on reducing the prospect for and probability of workforce re-entry."
 {¶ 4} The magistrate, in addressing this argument, noted that, under Ohio law, the commission is permitted to reject the conclusion contained within a vocational report and to draw its own conclusion from the same non-medical information. State ex rel. Ewart v. Indus. Comm. (1996),76 Ohio St.3d 139, 141. The magistrate further observed that, although the commission quoted from various portions of Hartung's report, nowhere in the commission's order did the commission indicate it was specifically relying upon such report, nor did Hartung opine in his report that relator could not return to some sustained remunerative employment.
 {¶ 5} Upon review, the record supports the magistrate's findings. In the vocational report at issue, while Hartung expressed concerns about relator's age, education and work history, Hartung further noted that, based upon the report submitted by Dr. Harvey Popovich, relator's employment options included parking lot attendant, assembler/fabricator, inspector/grader, and telemarketer. Moreover, the fact that the commission may have referenced portions of Hartung's report is not dispositive as the commission, "as the ultimate evaluator of non-medical vocational factors, was entitled to independently weigh the evidence and reach its own conclusion." State ex rel. Pence v. Indus. Comm., Franklin App. No. 04AP-124, 2004-Ohio-7052, at ¶ 4, citing State ex rel. Jacksonv. Indus. Comm. (1997), 79 Ohio St.3d 266, 270.
 {¶ 6} Relator also contends that it was an abuse of discretion for the commission to find that she could return to work as a babysitter. More specifically, relator argues that, while it is undisputed that she is limited to sedentary employment, all the vocational evidence identifies babysitting as a "medium duty position."
 {¶ 7} The commission's staff hearing officer ("SHO"), following the October 21, 2003 hearing, concluded that relator could return to the position she maintained as a babysitter "based upon the description of the job indicated at the hearing," whereby relator "would drop off and pick up kids at school." As noted by the magistrate, there was no transcript of the hearing before the SHO; here, in the absence of any further evidence as to relator's actual babysitting duties, we agree with the magistrate that the commission did not abuse its discretion in finding that relator could return to her former babysitting position "based upon the description" presented at the hearing. Further, as noted above, the commission's order includes various other viable sedentary employment options, apart from babysitting, that relator would be able to perform.
 {¶ 8} Based upon this court's independent review, pursuant to Civ.R. 53, we overrule relator's objections and adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained in it. In accordance with the magistrate's recommendation, we deny the requested writ of mandamus.
Objections overruled; writ denied.
BRYANT and LAZARUS, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. Marianna E. Fleming, : Relator,
 : v. : No.
 04AP-315 Industrial Commission of Ohio, :
 (REGULAR CALENDAR) Allied Molded Products, Inc. and
 : Defiance County Board of : Commissioners,
 : Respondents. :
 MAGISTRATE'S DECISION Rendered on October 18, 2004 Law Offices of Thomas Tootle Co., L.P.A., and Thomas Tootle, for relator.
Jim Petro, Attorney General, Kevin J. Reis and Stephen D. Plymale, for respondent Industrial Commission of Ohio.
Bugbee Conkle, LLP, Gregory B. Denny and A. Brooke Phelps, for respondent Allied Molded Products, Inc.
 IN MANDAMUS {¶ 9} Relator, Marianna E. Fleming, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied her application for permanent total disability ("PTD") compensation and ordering the commission to issue an order finding that she is entitled to that compensation.
Findings of Fact:
 {¶ 10} 1. Relator has sustained two work-related injuries. The first, in December 1986, while she was employed by the Defiance County Board of Commissioners, and the second, on February 14, 1994, while she was employed by respondent Allied Molded Products, Inc. ("claimant"). Relator's claims have been allowed for "sprain of right wrist, not otherwise specified," and "lumbar; sciatica down the left leg and left lumbar L5 radiculopathy; spondylolistheses L4-5."
 {¶ 11} 2. On November 15, 2002, relator filed an application for PTD compensation supported by the October 24, 2002 report of her treating physician, Dr. William D. Lorenz, who indicated that, after having referred relator to neurosurgeons, she is not a surgical candidate, even though the MRIs indicate that she does have some disc bulges. Dr. Lorenz opined that she was permanently and totally disabled as a result of the allowed conditions in her claim.
 {¶ 12} 3. Relator was examined by Dr. Harvey A. Popovich on April 7, 2003. After providing his examination findings, Dr. Popovich opined that relator had reached maximum medical improvement, assigned an 11 percent whole person impairment for all of her allowed conditions, and concluded that relator would be capable of performing sedentary work activity.
 {¶ 13} 4. Two employability assessments were prepared and presented to the commission. Carl W. Hartung, MRC, CRC, ABDA, issued a report dated May 17, 2003. Based upon the report of Dr. Lorenz, Mr. Hartung concluded that relator was not employable; however, based upon the report of Dr. Popovich, Mr. Hartung concluded that relator could immediately perform the following jobs: "Parking Lot Attendant, Assembler/Fabricator[,] Inspector/Grader, Telemarketer." Following appropriate academic remediation or brief skill training, Mr. Hartung concluded that relator could perform the following additional job: "Cashier." Mr. Hartung did note that relator's age of 50 years would moderately reduce her ability to adapt and adjust to different work tasks and work settings which are different from her previous work assignments. He also noted that her seventh grade education is in the lowest end of the limited educational category and that it might have a negative impact on her ability to perform simple routine tasks but not to the degree of preclusion. Mr. Hartung noted further that relator's previous work experience has been in the unskilled and low end of the semi-skilled categories and that she retained the ability to perform simple routine work presented in oral or demonstrative form. Mr. Hartung did conclude that the combination of relator's age, very limited education, and the potential of physical demand performance within the sedentary work level would have a significant impact on reducing the prospect for improbability of her re-entry into the workforce.
 {¶ 14} 5. A second vocational assessment was prepared by John P. Kilcher, CRC, CCM, CDMS, LPC, NNC, dated May 22, 2003. Mr. Kilcher concluded that relator did not have any transferable or marketable skills and that, when taken into consideration her reduced residual functional capacity, it was his opinion that the skills she would have acquired from her past jobs could not reasonably be developed to return her to sustained remunerative employment. Given her age, Mr. Kilcher concluded that relator could not reasonably develop new skills that would return her to the workforce.
 {¶ 15} 6. Relator's application was heard before a staff hearing officer ("SHO") on October 21, 2003. The SHO specifically relied upon the medical report of Dr. Popovich and concluded that relator was capable of performing at the sedentary work level. With regard to the nonmedical disability factors, the SHO noted the following:
This Staff Hearing Officer finds the Injured Worker has moderate vocational factors. The Injured Worker is currently 51 years of age, which would only moderately reduce any ability to adapt or adjust to different types of work settings. In addition, the Injured Worker has experienced and demonstrated an ability to perform a wide variety of tasks in the different employments that she has previously maintained. As a result, the ability to adapt and learn different types of employment has been demonstrated by her past work experience. The Injured Worker has a seventh grade education, which is at the lowest end of the limited educational category. However, she does indicate that she is capable of reading, writing and performing basic math. Although her educational level may have some negative impact on her ability to perform simple or routine tasks, it is not to the degree of preclusion. In addition, the Injured Worker has demonstrated an ability to understand and carry out simple instructions, presented in the oral, demonstrative, or combination of manners. As a result, although the field may be limited, the Injured Worker is physically and vocationally capable of still performing some type of sustained remunerative employment.
Finally, as to her work history, she has worked as an unskilled light laborer, a semi-skilled medium laborer, in various different types of employment. Again, she has demonstrated an ability to adapt and learn new types of work, either by demonstration or on-the-job training. As a result, this Staff Hearing Officer finds that there are sedentary work employment options that would be available to the Injured Worker within her age, educational and work experience. Such employment options that the individual would be able to immediately perform would be such things as a parking lot attendant, assembler/fabricator, inspector/grader or telemarketer. With some brief skill training, the Injured Worker could also perform the employment option of a cashier. This Staff Hearing Officer finds she could also perform such employment as a surveillance system monitor, and based upon the description of the job indicated at hearing, she could return to the position that she maintained as a babysitter, where she would take care of kids, while dropping them off and picking them up from school.
Therefore, as a result of the Injured Worker's ability to perform at least sedentary work on the basis of her physical capabilities and the fact that her vocational factors are only moderately negative, this Staff Hearing Officer finds the Injured Worker is capable of performing sustained remunerative employment and is therefore not temporarily and totally disabled. Her IC-2 Application, filed on November 15, 2002, is hereby DENIED.
 {¶ 16} 7. Thereafter, relator filed the instant action in mandamus in this court.
Conclusions of Law:
 {¶ 17} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm. (1967),11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State exrel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond Foundry Co. (1987),29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 18} The relevant inquiry in a determination of permanent total disability is claimant's ability to do any sustained remunerative employment. State ex rel. Domjancic v. Indus. Comm. (1994),69 Ohio St.3d 693. Generally, in making this determination, the commission must consider not only medical impairments but, also, the claimant's age, education, work record and other relevant nonmedical factors. State ex rel. Stephenson v. Indus. Comm. (1987),31 Ohio St.3d 167. Thus, a claimant's medical capacity to work is not dispositive if the claimant's nonmedical factors foreclose employability. State ex rel. Gay v. Mihm (1994), 68 Ohio St.3d 315. The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. State ex rel.Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203.
 {¶ 19} Relator contends that the commission abused its discretion by mis-interpreting the vocational report of Mr. Hartung and in concluding that relator was capable of performing some remunerative employment from a vocational standpoint. Specifically, relator points to those portions of Mr. Hartung's report where he indicated the following: (1) relator's age would moderately reduce her ability to adapt and adjust to different work tasks; (2) her seventh grade level of education is in the lowest end of the limited educational category and might have a negative impact on her ability to perform simple routine tasks; (3) it would not be reasonable to assume that relator could develop additional academic skills because of the length of time since her last school participation; and (4) the combination of her age, very limited education, and the potential of physical demand performance within the sedentary level would have a significant impact on reducing the prospect for and probability of her re-entry into the workforce. Relator contends that the commission abused its discretion by relying only on part of Mr. Hartung's vocational report and misinterpreting it. For the following reasons, this magistrate disagrees.
 {¶ 20} It is undisputed that the commission may reject the conclusion of a vocational report and draw its own conclusions from the nonmedical information. See State ex rel. Ewart v. Indus. Comm. (1996),76 Ohio St.3d 139. Second, nowhere in the commission's order did the commission indicate that it was specifically relying upon the vocational report of Mr. Hartung. Instead, the commission quoted from various portions of Mr. Hartung's report. As stated previously, the commission may reject the conclusion of a vocational report and draw its own conclusion from the nonmedical information contained within the vocational reports.
 {¶ 21} In the present case, the commission conducted its own vocational analysis based upon information contained within Mr. Hartung's report. For example, the commission agreed with Mr. Hartung's conclusions that relator could perform work as a parking lot attendant, assembler/fabricator, inspector/grader, and telemarketer. Furthermore, Mr. Hartung did not conclude that relator would not be capable of performing some sustained remunerative employment. Instead, he specifically listed jobs which she could immediately perform or could perform after brief remediation or skill training. Secondly, Mr. Hartung did not qualify her age as being a negative factor. Instead, he noted that it would moderately reduce her ability to adapt and adjust to different work tasks. Specifically, with regard to her education, Mr. Hartung noted that it might have a negative impact on her ability to perform simple routine tasks but not to the degree of precluding her from doing so. Again, nowhere did he say that relator could not return to some sustained remunerative employment. As such, relator's very narrow interpretation of his report is not accurate. Furthermore, as stated previously, the commission conducted its own analysis of the vocational factors and this magistrate finds that that analysis complies with the requirements of Noll.
 {¶ 22} Lastly, relator cites this court's decision in State ex rel.Bodnar v. Indus. Comm., Franklin App. No. 03AP-215, 2004-Ohio-1135, and asserts that the commission has the duty to cite to some evidence when it makes factual findings. Specifically, relator asserts that there is no evidence to support the commission's finding that relator could return to a babysitting job she had previously. However, the commission did cite evidence for this finding where the commission stated: "[B]ased upon the description of the job indicated at hearing, she could return to the position that she maintained as a babysitter, where she would take care of kids, while dropping them off and picking them up from school." The commission relied on relator's testimony and, without a transcript of the proceedings, this magistrate cannot find that the commission abused its discretion even if Mr. Kilcher described babysitting as a medium strength job.
 {¶ 23} Based on the foregoing, this magistrate concludes that relator has not demonstrated that the commission abused its discretion in denying her application for PTD compensation and this court should deny relator's request for a writ of mandamus.