DECISION ON OBJECTIONS TO THE MAGISTRATE'S DECISION
{¶ 1} Relator, Dorsey D. Bonnell, commenced this original action in mandamus seeking an order compelling respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying relator's application for permanent total disability ("PTD") compensation and to order the commission to find that relator is entitled to said relief. In the alternative, relator requests this court to remand this matter to the commission and to order the commission to consider the test results and conclusions provided by vocational experts Ms. Burk and Mr. Mangiarelli.
 {¶ 2} Pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate of this court who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) In her decision, the magistrate found that relator's interpretation of Ms. Burk's vocational report was too narrow. Furthermore, the magistrate determined that the commission conducted its own analysis of the nonmedical factors and did not abuse its discretion in concluding that the nonmedical factors on the whole favored reemployment. The magistrate also found that the commission cited the evidence upon which it relied and issued an order which met the requirements of State ex rel. Stephenson v. Indus. Comm. (1987),31 Ohio St.3d 167, and State ex rel. Noll v. Indus. Comm. (1991),57 Ohio St.3d 203. Therefore, the magistrate has recommended that the requested writ of mandamus be denied.
 {¶ 3} Relator filed objections to the magistrate's decision essentially rearguing the same points that were adequately addressed in the magistrate's decision. For the reasons set forth in the magistrate's decision, relator's arguments are without merit.
 {¶ 4} Following an independent review of this matter, we find that the magistrate has properly determined the pertinent facts and applied the appropriate law. Therefore, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision, we deny the requested writ of mandamus.
Objections overruled; writ of mandamus denied.
Bryant and Petree, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State ex rel. Dorsey D. Bonnell, :
 Relator, :
v. : No. 04AP-1291
McGill Septic Tank Co. and : (REGULAR CALENDAR)
Industrial Commission of Ohio, :
 Respondents. :
 MAGISTRATE'S DECISION Rendered on May 23, 2005 Donald R. Ford, Jr., for relator.
Jim Petro, Attorney General, and Andrew J. Alatis, for respondent Industrial Commission of Ohio.
In Mandamus.
 {¶ 5} Relator, Dorsey D. Bonnell, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied relator's application for permanent total disability ("PTD") compensation, and ordering the commission to find that he is entitled to PTD compensation. In the alternative, relator requests that a writ of mandamus be issued remanding this matter back to the commission and ordering the commission to consider the test results and conclusions provided by vocational experts Ms. Burk and Mr. Mangiarelli.
Findings of Fact:
 {¶ 6} 1. Relator sustained a work-related injury on April 29, 1999, and his claim has been allowed for "contusion of right second toe; contusion of right third toe; dislocation of foot NEC — closed right second toe; dislocation of foot NEC — closed right third toe; adjustment reaction, mixed emotion."
 {¶ 7} 2. On October 24, 2003, relator filed an application for PTD compensation. In support of his application, relator submitted the May 12, 2003 report of Dr. Chistopher J. Klonk who indicated that relator had the following work restrictions:
No more then [sic] 2 hours standing or walking combined, total in a day. Mostly sitting type work. No use of repetitive foot controls, however, he can use his hands repetitively. No frequent ladder or stair climbing. Basically, what he needs it [sic] a job where he can just sit most of the time, go to and from the job site by walking, but when he gets to the job site, sit.
 {¶ 8} 3. Relator also attached the July 22, 2003 report of Dr. Michael G. Warshaw who opined as follows:
Based upon the history, physical examination, and radio-logical studies, it is quite apparent that Mr. Bonnell qualifies for permanent and total disability. Mr. Bonnell is not capable of engaging in substantial, remunerative employment as a result of the allowed conditions in this claim, which are the result of the accident that occurred while he was on the job. * * *
 {¶ 9} 4. Relator also submitted the August 6, 2003 report of Dr. Terence Heltzel who examined relator for his psychological condition. Dr. Heltzel opined as follows:
Mr. Bonnell will most likely continue to rely on maintenance appointments of psychological intervention to avoid deterior-ation of his present coping skills. As with many individuals who suffer from chronic pain, more frequent sessions may be required should the patient relapse. Mr. Bonnell has not been able to work since he attempted work the week of his injury. Within a reasonable degree of medical probability, Mr. Bonnell's current estimated degree of psychiatric impairment directly attributable to his allowed condition is 35%. Mr. Bonnell is considered to be totally and permanently disabled as a result of his anxiety, depression, and chronic pain condition.
 {¶ 10} 5. Relator also submitted the November 14, 2003 vocational report of Robert Mangiarelli who noted that relator had considerable difficulty with focus and concentration and that he has no marketable or transferable skills given his past work history and current limitations. Mr. Mangiarelli concluded as follows:
A review of the all [sic] information available would indicate that Dorsey is displaying insufficient worker traits to qualify for gainful employment. To this extent, there is current medical and psychological information to suggest that Dorsey would be permanently and totally disabled from all gainful employ-ment. However, even if we were to assume that he could handle sedentary activities, he presents with neither market-able nor transferable skills given his past relevant work history and limitations. He also presents with educational deficits and poor focus and concentration. As a result, he is clearly not a candidate for entry level on-the-job training in sedentary activities nor formal retraining in a school setting. When considering all information, it is the opinion of this vocational specialist that Dorsey would not be capable of engaging in any sustained, remunerative employment activity.
 {¶ 11} 6. Relator was examined by Dr. Steven B. Van Auken for his allowed psychological conditions. Dr. Van Auken issued a report dated April 14, 2004 wherein he opined that relator had reached MMI, assessed a 15 percent whole person impairment and concluded that relator could return to his former position of employment as well as any other sustained remunerative employment for which he was qualified.
 {¶ 12} 7. The record also contains the April 20, 2004 report of Dr. John L. Dunne who opined that relator had reached maximum medical improvement ("MMI") relative to his allowed physical conditions, assessed a 30 percent whole person impairment, and opined that relator was capable of performing sedentary work.
 {¶ 13} 8. An employability assessment report was prepared by Barbara E. Burk. Based upon the reports of Drs. Heltzel and Warshaw, Ms. Burk indicated that there were no jobs relator could perform. However, based upon the reports of Dr. Van Auken, Ms. Burk opined that relator could perform the following jobs without any training: "Truck Driver; General Laborer; Assembler." Based upon the report of Dr. Dunne, Ms. Burk opined that relator could perform the following jobs: "Check Cashier; Telephone Solicitor; Assembler."
 {¶ 14} Ms. Burk indicated that, at age 57, relator would learn new, unfamiliar tasks more slowly than the average worker and that this would affect his ability to compete with younger individuals. Ms. Burk noted that relator had a limited education and would have difficulty performing many tasks found in semi-skilled and skilled work activities. She found this educational level was viewed as a barrier to reemployment. Looking at relator's work history, Ms. Burk noted that relator was capable of gaining and maintaining employment, was probably a hands-on learner but had not developed any skills that would transfer to sedentary or light-duty work.
 {¶ 15} 9. Relator's application was heard before a staff hearing officer ("SHO") on July 1, 2004 and resulted in an order denying the application. The SHO relied upon the medical reports of Drs. Dunne and Van Auken and the vocational report of Ms. Burk. Thereafter, the commission provided its own analysis of the nonmedical disability factors and stated as follows:
The Staff Hearing Officer finds that the claimant is 58 years of age. Said age is an age that is definitely a barrier to re-employment but certainly is not a bar as it can be assumed that claimant does in fact have at least five years of working life ahead of him, and therefore concludes that claimant's age is a neutral factor in claimant's re-employment potential.
The Staff Hearing Officer finds that the claimant's education is a positive factor. The claimant's 10th grade education coupled with the lack of a GED may not necessarily provide claimant with present time skills and may make it more difficult to obtain work, but is more than adequate to meet the basic demands of a number of entry-level jobs and is consistent with the ability to perform and or learn some skilled, as well as un-skilled work on a sedentary basis. Furthermore, the Staff Hearing Officer finds that the claimant's 10th grade education in and of itself does not indicate a lack of intellectual ability to be retrained, as claimant indicated on his IC-2 Application his ability to read, write, and do basic math.
Furthermore, the claimant's work history is also a positive factor. The claimant working as a power press tender, millwright, truck driver and as a laborer/cement mason indicates employment predominately classified as semi-skilled positions of a heavy duty nature, which indicates and suggests that the claimant has the skills and qualifications to perform some other entry-level employment or be able to readily transfer to a number of entry-level occupations on a sedentary or light-duty basis, based upon his prior semi-skilled work history.
In summary, the Staff Hearing Officer concludes that claimant's non-medical disability factors on the whole favor re-employability, i.e. that the education and work history factors outweigh the age factor and that the claimant can at least be retrained to perform other occupations based upon his 10th grade education and prior semi-skilled work history.
 {¶ 16} 10. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 17} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm. (1967),11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State exrel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond Foundry Co. (1987),29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 18} The relevant inquiry in a determination of permanent total disability is claimant's ability to do any sustained remunerative employment. State ex rel. Domjancic v. Indus. Comm. (1994),69 Ohio St.3d 693. Generally, in making this determination, the commission must consider not only medical impairments but, also, the claimant's age, education, work record and other relevant nonmedical factors. State ex rel. Stephenson v. Indus. Comm. (1987),31 Ohio St.3d 167. Thus, a claimant's medical capacity to work is not dispositive if the claimant's nonmedical factors foreclose employability. State ex rel. Gay v. Mihm (1994), 68 Ohio St.3d 315. The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. State ex rel.Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203.
 {¶ 19} In this mandamus action, relator contends that the commission has misinterpreted the vocational report of Ms. Burk based upon relator's assertion that the commission stated as follows in its order:
The Staff Hearing Officer erred in stating that Ms. Burk's report found the "claimant's nonmedical disability factors do not have a negativeimpact on claimant's ability to work or be retrained, but rather are tobe viewed as somewhat positive factors from a vocational standpoint",
(page two, paragraph three of the record of proceedings contained on page two of the stipulated evidence).
(Relator's brief at 2; emphasis sic.)
 {¶ 20} However, upon review, the magistrate finds that the commission actually stated as follows:
* * * Miss Burke performed a vocational evaluation of the claimant on behalf of the Industrial Commission. Upon reviewing the claimant's work history, age, and education, she is of the opinion on a whole noting that claimant would have some barriers to re-employment finds that the claimant's non-medical disability factors do not necessarily have a negative impact on claimant's ability to work or to be retrained but rather are to be viewed as somewhat positive factors from a vocational viewpoint.
 {¶ 21} Contrary to relator's assertions, the commission did note that Ms. Burk opined that relator would have some barriers to reemployment. In her vocational report, Ms. Burk did list certain jobs which, in her opinion, relator would be capable of performing. Furthermore, the commission, as the exclusive evaluator of disability, conducted its own analysis of relator's nonmedical disability factors. The commission is the sole evaluator of the nonmedical factors and may reject any and all vocational reports. See State ex rel. Ewart v. Indus. Comm. (1996),76 Ohio St.3d 139. Because the commission is the expert on the nonmedical or vocational evidence, it is not critical or even necessary for the commission to accept any vocational reports. State ex rel. Jackson v.Indus. Comm. (1997), 79 Ohio St.3d 266.
 {¶ 22} In the present case, the magistrate concludes that relator has too narrowly interpreted the commission's discussion of Ms. Burk's vocational report. Furthermore, even if the commission had misconstrued her report, the commission conducted its own analysis of the nonmedical disability factors finding that age was a neutral factor, that relator's education was a positive factor in light of his ability to read, write, and perform basic math, and that his work history was also a positive factor. The commission cited the evidence upon which it relied and issued an order which meets the requirements of Stephenson and Noll. As such, the magistrate finds that relator has not demonstrated that the commission abused its discretion.
 {¶ 23} Based on the foregoing, the magistrate concludes that relator has not demonstrated that the commission abused its discretion and relator's request for a writ of mandamus should be denied.